# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JOSEPH D. PLYMALE,

           Petitioner,      :      Case No. 2:17-cv-832

  - vs -                       District Judge James L. Graham
                                   Magistrate Judge Michael R. Merz

Warden,
  Ross Correctional Institution

                                   :

            Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Joseph Plymale under 28 U.S.C. § 2254, is before the Court for decision on the merits. Plymale filed his petition on September 21, 2017 (ECF No. 1). On Magistrate Judge Vascura's Order (ECF No. 2), the Respondent has filed the State Court Record (ECF No. 7) and a Return of Writ (ECF No. 8). Petitioner has not filed a reply in response, and his time for doing so expired January 16, 2018. The Magistrate Judge reference was recently transferred to the undersigned to help balance the workload in the District.

**Litigation History**

Plymale was indicted March 6, 2014, on twelve felony counts arising out of the murder of John Sheets. Three counts were dismissed on the State's motion, but a trial jury convicted Plymale of the remaining charges. Petitioner was sentenced to life without parole on the aggravated murder conviction with additional prison terms for aggravated robbery, having weapons while under a

disability, tampering with evidence, and a firearm specification. On direct appeal the convictions and sentence were affirmed. *State v. Plymale*, 2016 Ohio App. LEXIS 2199 (4th Dist. Jun. 3, 2016), appellate jurisdiction declined, 147 Ohio St. 3d 1445 (2016).

Plymale filed his Petition in this Court on September 12, 2017, the date he deposited it in the prison mail system. He pleads the following grounds for relief:

> **Ground One:** The state tampered with or at the very least mishandled evidence.
>
> **Supporting Facts:** According to the OHIO BCI the codefendants [sic] cell phone was removed from his home and taken into evidence by the OHIO BCI, sealed and labeled with the serial number on 02/05/2014 "plaintiff evidence # 81" then transferred to the [G]allia [C]ounty [S]heriff evidence locker. There is a submission sheet from the OHIO BCI stating that they were given the phone for testing. In the same submission they state they tested the phone. When in fact the phone had never been tested. According to the Gallia County Sheriff's office the phone had remained in the evidence locker for 11months. "state claims clerical error" In a case of this magnitude, if in fact it was a clerical error it clearly should not be accepted or tolerated and most certainly not by the judge. If this was a clerical error, how many more were made?
>
> **Ground Two:** The aggravated murder, aggravated robbery, and the related verdicts were against the manifest weight of the evidence.
>
> **Supporting Facts:** Are verdicts against the manifest weight of evidence when they are supported primarily by the codefendant's story that is self-serving and inconsistent. The codefendant admitted under oath that he lies. Throughout his interview with authorities his story changed repeatedly to protect himself. Throughout his testimony his story was also very inconsentant [sic]. When it came to the day that the murder took place on the stand the codefendant answered he could not remember or could not recall at least 12 different times. The codefendant was offered a plea deal of merely probation in a murder trial, with evidence proving he was involved, for unreliable testimony against the defendant. There was no physical evidence linking the defendant to the murder.
>
> **Ground Three:** The court improperly imposed consecutive sentences upon the defendnt [sic].

> **Supporting Facts**: Before imposing consecutive sentences, a court is obligated to make specific findings. If the court feels that it made all the findings necessary for being able to impose these sentences, I feel that they did not, according to State v. Bonnel,140 Ohio St.3d 209,2014-0hlo-3177,16 N.E.3d 659. At least one of these findings was not met.
>
> **Ground Four**: Trial counsel was ineffective. fith [sic] and sixth amendments.
>
> **Supporting Facts:** Trial counsel was ineffective for failing to object to the states [sic] numerous comments on the defendant's post-arrest silence. It is clearly the belief of an american citizen that you have the constitunal [sic] right to be silent, and it not be held against you. Trial counsel was also ineffective when there was not a notice of alibi filed, which prevented a key witness for the defendant from testifying to his whereabouts the day of the murder.

(Petition, ECF No. 1, PageID 5, 7, 8 and 10.)

## Analysis

**Ground One:  State Mishandling of Evidence**

In his First Ground for Relief, Plymale claims the State tampered with or mishandled his co-defendant's cellphone.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida*, 463 U.S. 939 (1983). Inaccuracies in the chain of custody of evidence are not controlled by the Constitution in any way. Plymale's First Ground for Relief should be dismissed for failure to state a constitutional claim on which habeas corpus relief can be granted.

**Ground Two: Manifest Weight of the Evidence**

In his Second Ground for Relief, Petitioner claims his conviction is against the manifest weight of the evidence. A manifest weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986). Thus, the Second Ground for Relief should be dismissed on the same basis as the First.

**Ground Three: Consecutive Sentences**

In his Third Ground for Relief, Petitioner asserts the trial court improperly imposed consecutive sentences on him. Here again, Plymale pleads a claim that is not cognizable in habeas corpus. The limitations on the imposition of consecutive sentences imposed by Ohio law are not mandated by the federal Constitution.

**Ground Four: Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Petitioner pleads his trial attorney provided ineffective assistance of trial counsel when he failed to object to numerous comments by the prosecutor on Plymale's post-arrest silence, and failed to file a notice of alibi. Plymale raised both of these claims on direct appeal and the Fourth District Court of Appeals decided them as follows:

> **B. Ineffective Assistance of Counsel**
>
> **[*P33]** Plymale argues that his trial counsel provided constitutionally ineffective assistance when he: (1) failed to file a

notice of alibi and (2) failed to object to the state's comments on his post-arrest silence.

### 1. Standard of Review and Law

**[*P34]** To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 23. Because this issue cannot be presented at trial, we conduct the initial review.

**[*P35]** The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). In reviewing the claim of ineffective assistance of counsel we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

### 2. Failure to File Notice of Alibi

**[*P36]** Plymale claims that his attorney provided ineffective counsel because he did not file a notice of alibi as required by Crim.R. 12.1. Plymale argues that in the opening statement, his counsel told the jury what Plymale did during the day on February 3, 2014 and that part of the events of the day involved Plymale's sister, Burgandy Plymale. Counsel stated that after Bowman came by, Burgandy Plymale stopped by Plymale's apartment, got cash from Plymale for cigarettes, walked down to the convenience store, purchased cigarettes, and came back to Plymale's apartment around 3:00 pm and stayed and watched movies with them and then eventually left. Plymale argues that as a result of counsel's oversight, the exclusion of his sister's testimony was prejudicial because it prevented him from presenting corroborating testimony to support his alibi testimony and bolster his credibility.

[*P37] The state points out that Crim.R. 12.1 provides that where a defendant proposes to offer alibi testimony, a notice of alibi must be filed *seven* days prior to trial. Here, Plymale's counsel did not disclose Burgandy Plymale as a witness until *five* days before trial. Therefore, Plymale's argument requires this Court to conclude that counsel knew of alibi testimony in time to file a timely notice even though the record fails to demonstrate this.

[*P38] In *State v. Few*, 2nd Dist. Montgomery No. 25161, 2012-Ohio-5407, trial counsel had filed a notice of alibi the day after trial started and had given a copy to the state the day before it started. In rejecting defendant's ineffective assistance of counsel claim for failure to file a timely notice of alibi, the appellate court found that while the notice was deficient, "there is nothing in the record to reflect that trial counsel was made aware of Few's claimed alibi seven days prior to the date of the trial." *Id.* at ¶ 15. Therefore the court concluded that the record did not demonstrate that trial counsel was deficient for failing to comply with Crim.R. 12.1. *See also State v. Alexander*, 6th Dist. Erie No. E-91-86, 1993 Ohio App. LEXIS 3861, 1993 WL 313564, *10 (Aug. 6, 1993) (rejecting an ineffective assistance of counsel claim where there was nothing in the record to show that trial counsel knew of the alibi seven days prior to trial).

[*P39] Here there is no evidence in the record that Plymale's counsel knew of a potential alibi in time to file a timely notice. Plymale's counsel told the trial court why he did not file a notice of alibi: he did not believe that the witness's testimony would provide a clear alibi defense because evidence of Sheets's time of death was uncertain. In his explanation Plymale's counsel did not state when he learned of the potential alibi witness, or whether he could have filed a timely notice of alibi, if he had determined it was appropriate to do so. The record shows that he did not file a supplemental list of witnesses until January 28, 2015 -- five days before trial. There is nothing in the record to indicate when counsel learned that Burgandy Plymale may have relevant alibi testimony. Without this evidence we would have to speculate about whether trial counsel's failure to file a notice of alibi was based on his lack of knowledge of it, the product of an informed and calculated trial-strategy decision, or negligence. *See State v. Smith*, 17 Ohio St.3d 98, 101, 17 Ohio B. 219, 477 N.E.2d 1128, 1131 (1985) (finding that counsel's noncompliance with the notice of alibi requirement in Crim.R. 12.1 "was an intended, self-serving trial tactic"). We cannot conclude that trial counsel's performance was deficient based upon speculation. Plymale cannot prevail in a direct appeal on a claim of ineffective assistance of counsel based on evidence that is outside

the record. *See State v. Hampton*, 4th Dist. Lawrence No. 15CA1, 2015-Ohio-4171, ¶ 28.

### 3. Failure to Object to State's Questioning on Post-Arrest Silence

**[*P40]** Plymale argues that his counsel was ineffective for failing to object to the state's repeated comments on his post-arrest silence. He claims that the state's comments on his silence for impeachment purposes violated his constitutional rights and his counsel's silence exacerbated this error. The state argues that Plymale waived his *Miranda* rights and gave inconsistent testimony. Thus, the state's questioning was for impeachment, contrasting Plymale's two drastically different stories.

**[*P41]** The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11. The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation. Additionally, a defendant can invoke his rights at any time prior to or during questioning. *State v. Harper*, 4th Dist. Vinton No. 11CA684, 2012-Ohio-4527, ¶ 14.

**[*P42]** The record shows that after the police caught Plymale selling firearms on Friday, February 7, 2014, investigator Michael Trout questioned him. Plymale signed a written waiver of his *Miranda* rights and answered Trout's questions. The record does not contain any other references to police questioning of Plymale and we can find no instances in which Plymale asserted his *Miranda* rights. During the interview when Trout questioned him, Plymale said that he obtained the firearms from an individual named Clinton Shelton. However, Plymale waived his Fifth Amendment right again and testified in his defense at trial, telling a completely different story, claiming he received the firearms from Bowman.

**[*P43]** The state's questioning focused on whether Plymale had previously told Trout any part of the drastically different trial testimony. Plymale answered that he had not told Trout any of those facts during the interview, except for the fact that he was trying to sell guns to Cody Hockman:

Q. When you were arrested you did lie to Mike Trout according to your testimony today, about Clint Shelton giving you the guns?

A. Yes sir.

* * *

Q. But you lied to both Justin Rice and Mike Trout according to your testimony today?
A. Yes sir.

Q. The police who were investigating this incident?

A. Yes sir.

Q. Did you ever tell Mike Trout about Chris Bowman?

A. No.

Q. Did you ever tell Mike Trout that Chris Bowman asked to borrow one of your cell phones?

A. No sir.

Q. Did you ever tell Mike Trout that you rented this storage unit from Noah Stevens?

A. No sir.

Q. Did you ever tell Mike Trout that the keys that were in your pocket when you were arrested went to the storage unit lock?

A. No sir.

Q. Did you ever tell Mike Trout that there were guns in that storage unit?

A. No sir.

Q. Did you ever tell Mike Trout about trying to sell a gun to Cody Hockman?

A. No sir. Sorry Eric, I did.

8

Q. Okay.

A. Yeah.

Q. On that one you did?

A. Yeah, yes sir, I did.

Q. And from February the 7th of 2014 when you were arrested until today have you ever told this story about Chris Bowman to any law enforcement officer investigation the murder of John Sheets.

A. No sir.

**[\*P44]** On redirect, Plymale testified that he was only questioned by police once and that was on the evening of February 7, 2014. The reason he did not mention Bowman was because he was not specifically asked about him:

Q. Joey, Mr. Mulford just asked you a whole string of questions about whether you told Mike Trout a whole list of things and you answered no to all of them except one. Did Mike Trout ask you any of those questions?

A. No sir.

Q. He asked if you've told this story to law enforcement officers since February 7, 2014, have you been questioned by any law enforcement officers over that time?

A. No sir.

**[\*P45]** The state's questioning, Plymale's answers, and defense counsel's redirect focused on Plymale's two inconsistent versions of events, both made after waiving his *Miranda* and Fifth Amendment rights. The questioning shows that, although Plymale had the opportunity during Trout's questioning to tell his "Bowman" version of events, he never told it to Trout or the other investigators.

**[\*P46]** If Plymale had asserted his *Miranda* rights in response to a second attempt by police to question him, the state's last question could possibly be construed as improperly referencing this. However, there is no evidence in the record that Plymale ever asserted his *Miranda* rights. In the context, the last question emphasized Plymale's inconsistency: Over a year later, for the first

> time at trial and never during Trout's questioning, Plymale is telling a vastly different story. Thus we find that the state did not violate Plymale's Fifth Amendment rights because the state's questioning did not improperly use Plymale's silence as substantive evidence of guilt. Instead the state used his lack of silence - his two inconsistent stories - to impeach his credibility and discredit his trial testimony. As a result, trial counsel's objection on Fifth Amendment grounds would have been futile. It was not deficient and his decision on redirect to frame it as a lack of police diligence was trial strategy.
>
> **[*P47]** For the same reasons we reject Plymale's argument that during closing argument the state improperly referenced his silence to infer his guilt. Like the cross-examination questioning, the state's comments during closing argument emphasized Plymale's inconsistent testimony and the fact that the version Plymale told at trial was not told to investigators a year earlier when Trout questioned him.
>
> **[*P48]** Because Plymale has not established a viable claim of ineffective assistance of his trial counsel, we overrule his second assignment of error.

*State v. Plymale*, 2016-Ohio-3340.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In its decision, the Fourth District clearly understood and applied the controlling Supreme Court precedent, *Strickland v. Washington*. To prevail, then, Plymale must show that the application was objectively unreasonable. The Petition fails to do so, and he has not filed a reply to the Return.

Considered *de novo*, the Magistrate Judge finds the Fourth District's application to be

10

reasonable. There was no Fifth Amendment violation in the prosecution's showing that Plymale had made very inconsistent statements to the police when he talked to them. While a criminal defendant is entitled to remain silent, he is not entitled to give up that silence and talk to the police and then not have his inconsistencies exposed when he becomes a witness at trial. Respecting the notice of alibi, the Fourth District found there was nothing in the record to show trial counsel knew of a viable alibi witness until it was too late. Plymale could have expanded the record on that point by filing a petition for post-conviction relief showing when counsel knew of the alibi witness, but he never did so.

Because the Fourth District's decision of the ineffective assistance of trial counsel claim is an objectively reasonable application of *Strickland* and thus entitled to deference, the Fourth Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 2, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).